## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| James W. Smith, Jr., on his own behalf and on behalf of those similarly situated, | Case No. 12-cv-2669 (SRN/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Questar Capital Corporation, Yorktown Financial Companies, Inc., and Allianz Life Insurance Companies of North America, | |
| Defendants. | |

Daniel E. Gustafson, Karla M. Gluek, and David A. Goodwin, Gustafson Gluek PPLC, 120 South Sixth Street, Suite 2600, Minneapolis, MN 55402; Robert E. Gordon, Scott L. Adkins, and Stephen McGuinness, Gordon & Doner, PA, 4114 Northlake Boulevard, Palm Beach, FL 33410; Charles E. Scarlett, Bradford M. Gucciardo, and Scott D. Hirsch, Scarlett Gucciardo & Hirsch, PA, 25 Seabreeze Avenue, 3rd Floor, Delray Beach, FL 33483, for Plaintiff.

Anthony N. Cicchetti, Jorden Burt LLP, 175 Powder Forest Drive, Suite 301, Simsbury, CT 06089; Roland C. Goss and James F. Jorden, Jorden Burt LLP, 1025 Thomas Jefferson Street, NW, Suite 400 East, Washington, DC 20007; and Wendy J. Wildung, Faegre Baker Daniels LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on the Motion to Dismiss the Class Action Complaint, [Doc. No. 16], brought by Defendants Questar Capital Corporation, Yorktown Financial Companies, Inc., and Allianz Life Insurance Companies of North America. For the reasons set forth below, the Court grants it in part and denies it in part.

1

## II.     BACKGROUND

Plaintiff and putative class representative James W. Smith, Jr. ("Smith") is an investor who resides in Florida.  (See Compl. ¶ 15 [Doc. No. 1].)  Defendant Questar Capital Corporation ("Questar") is a Minnesota corporation with its principal place of business in Minnesota.  (Id. ¶ 15.)  Questar allegedly solicited, offered, and sold securities that were issued by non-party Diversified Business Services & Investments, Inc. ("DBSI") and its subsidiaries and affiliates.  (Id. ¶ 13.)  DBSI is an Idaho corporation, with its principal place of business in Idaho.  (Id. ¶ 8.)  A now-defunct Ponzi scheme, DBSI purported to finance the purchase of real estate ventures through wholly-owned subsidiaries and Special Purpose Corporations.  (Id. ¶¶ 1, 8.)  On February 21, 2008, Smith purchased from Questar a note issued by DBSI 2008 Notes Corporation—a DBSI subsidiary—for $50,000 ("the Smith Note").  (Id. ¶ 63; Ex. G to Aff. of Daniel E. Gustafson in Supp. of Pl.'s Opp'n to Defs.' Mot. to Dismiss [Doc. No. 30-7].)  Smith alleges that from approximately October 16, 2006 until October 16, 2012, members of the putative class purchased or acquired DBSI-issued securities via private placement offerings, similarly offered and sold by Questar.  (Compl. ¶¶ 10, 50.)

Defendant Yorktown Financial Companies, Inc. ("Yorktown") is an Indiana corporation with its principal place of business in Minnesota.  (Id. ¶ 18.)  Defendant Allianz Life Insurance Companies of North America ("Allianz") is a Minnesota corporation, with its principal place of business in Minnesota.  (Id.)  Smith alleges that according to Questar's regulatory filings with the Financial Industry Regulatory Authority ("FINRA"), Yorktown and Allianz "directly or indirectly control Questar," including Questar's management and

policies.  (<u>Id.</u> ¶¶ 155-56.)

In November 2008, DBSI filed for bankruptcy protection in the District of Delaware. (Compl. ¶ 20.)  The Bankruptcy Court appointed an Examiner, who filed an Interim Report and a Final Report.  (<u>Id.</u> ¶ 22; Ex. B to Compl. [Doc. No. 1-2]; Ex. B to Aff. of Anthony N. Cicchetti [Doc. No. 19-2].)  The Examiner's Interim Report allegedly focused on DBSI's misuse of proceeds from the DBSI 2008 Notes Corporation offering.  (Compl. ¶ 23.)  The Examiner's Final Report allegedly showed that as early as 2005, DBSI constantly needed new investor funds in order to meet pre-existing obligations.  (<u>Id.</u> ¶ 24.)

Smith alleges that Questar's due diligence advisors raised questions about the accuracy of DBSI's offering materials and financial statements.  (<u>Id.</u> ¶ 26.)  Alternatively, Smith alleges that the due diligence reports raised certain red flags that should have prompted Questar to undertake its own due diligence.  (<u>Id.</u>)  Based on these reports, Smith alleges that Questar should have realized that DBSI was likely a Ponzi scheme and informed Questar's brokers and customers of the same.  (<u>Id.</u> ¶¶ 27-28.)  Questar, however, allegedly continued selling DBSI securities and circulating DBSI's private placement memoranda ("PPM") and offering materials.  (Compl. ¶¶ 36, 38.)  In addition, Questar allegedly solicited and made assurances to Smith and members of the putative class that DBSI was a safe and well-established company that would provide reliable returns.  (<u>Id.</u> ¶ 50.)  Relying on Questar's assurances, Smith alleges that he and the putative class members sustained substantial losses in DBSI's now-worthless securities.  (<u>Id.</u> ¶¶ 64, 84.)  Smith alleges that Questar knew—or was deliberately reckless or negligent in not knowing—that their statements were materially false and misleading.  (<u>Id.</u> ¶ 50.)

On October 18, 2012, Smith filed a Class Action Complaint, alleging the following causes of action: violations of the Minnesota Securities Act under Minn. Stat. §§ 80A.68(1), 80A.68(2), 80A.76(g)(3), 80A.86(3), and 80.76(g)(1) (Counts 1, 2, 3, 6, and 7); common law negligence (Count 4); and common law negligent misrepresentation (Count 5). (Compl. ¶¶ 79-157.)  On January 2, 2013, Defendants moved to dismiss the Complaint, which Plaintiff opposed on March 4, 2013.  (Defs.' Mot. to Dismiss [Doc. No. 16]; Pl.'s Opp'n to Defs.' Mot. to Dismiss [Doc. No. 29].)  On April 1, 2013, this Court heard oral argument.  (Min. Entry for Mot. Hr'g [Doc. No. 37].)

## III.   DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief."  To meet this standard and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Although a complaint is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citation omitted).  It is not, however, a "probability requirement."  Id. (citation omitted).  Thus, "a well-pleaded complaint may

proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  Several principles guide courts in determining whether a complaint meets this standard.  First, the court must take the plaintiff's factual allegations as true and grant all reasonable inferences in favor of the plaintiff.  Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009). This tenet does not apply, however, to legal conclusions or "formulaic recitation of the elements of a cause of action," and such allegations may properly be set aside.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  In addition, some factual allegations may be so indeterminate that they require "further factual enhancement" in order to state a claim.  Id. (quoting Twombly, 550 U.S. at 557.)  Finally, the complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  Braden, 588 F.3d at 594.  Evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679 (citation omitted).  A motion to dismiss a complaint should not be granted unless it appears beyond doubt that a plaintiff can prove no set of facts that would entitle him to relief.  Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).

### B.  Materials Considered

A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999); <u>see</u> <u>Piper Jaffray Cos., Inc. v. Nat'l Union Fire Ins. Co.</u>, 967 F. Supp. 1148, 1152 (D. Minn. 1997) (finding that on a motion to dismiss, "the Court simply may not . . . resolve factual disputes on the basis of preemptive (and untested) submissions" and may only "consider extra-pleading material necessarily embraced by the pleadings . . . and all documents they incorporate by reference").

Both parties have submitted extra-pleading materials and statements in their memoranda.  Defendants present public filings, news reports, business articles, and other documents that are not referenced in the Complaint.  (<u>See</u> Aff. of Anthony N. Cicchetti [Doc. No. 19].)  In addition, Defendants' Memorandum includes the Confidential Private Placement Memorandum for the DBSI 2008 Notes Corporation, dated February 6, 2008 [Doc. No. 19-1]; the Bankruptcy Examiner's Final Report [Doc. No. 19-2]; and the Subscription Agreement between DBSI 2008 Notes Corporation and Plaintiff, dated February 21, 2008 [Doc. No. 19-3].  Plaintiff's Memorandum provides the same PPM [Doc. No. 30-4] and Subscription Agreement [Doc. 30-7], as well as public filings and non-public documents that are not referenced in the Complaint.  (<u>See</u> Aff. of Daniel E. Gufstafson in Supp. of Pl.'s Opp'n to Defs.' Mot. to Dismiss [Doc. No. 30].)

Here, materials embraced by the Complaint include the PPM for the DBSI 2008 Notes Corporation, the Bankruptcy Examiner's First Interim Report and the Final Report,

the Subscription Agreement, and the Notice to Members 03-71 and Regulatory Notice

10-22.  The Court considers the PPM because it is referenced in the Complaint and forms

the basis of the dispute.  (E.g., Compl. ¶¶ 11, 33, 38-42, 47, 50-55, 61, 73.)  Similarly, the

Bankruptcy Examiner's Reports are referenced in the Complaint, (id. ¶¶ 23, 24, 25); they

form the basis of the dispute; and the First Interim Report is an exhibit to the Complaint

[Doc. No. 1-2].  The Court also considers the Subscription Agreement despite its lack of

reference in the Complaint, because it forms the basis of the dispute.  Finally, the Court

considers the Notice to Members 03-71 and Regulatory Notice 10-22 because they are

referenced in and attached to the Complaint.  (Compl. ¶¶ 104, 107, 129-31; Exs. C and D

to Compl. [Doc. Nos. 1-3 and 1-4].)  The Court considers these documents without

converting the motion to dismiss into a motion for summary judgment.  The Court will

not consider other statements and materials referenced in the parties' briefing in the

context of this Motion to Dismiss.

### C.  Rule 9(b)

Certain claims that include allegations of fraud must be pled with particularity

under Federal Rule of Civil Procedure 9(b).  Claims subject to the particularity

requirements must be pled to include "such matters as the time, place and contents of

false representations, as well as the identity of the person making the misrepresentations

and what was obtained or given up thereby."  Parnes v. Gateway 2000, Inc., 122 F.3d

539, 549 (8th Cir. 1997) (citations omitted).  "[C]onclusory allegations that a defendant's

conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  Id. (citations

omitted).  As a general matter, the "who, what, when, where, and how" of any fraud

claim must be pled in detail.  Id. at 550 (citations omitted).  In the securities fraud context, Rule 9(b) requires that the pleading set forth facts explaining why it is claimed that each of the defendants knew the representations to be untrue or misleading when they were made.  In re Buffets, Inc. Sec. Litig., 906 F. Supp. 1293, 1300 (D. Minn. 1995). The Court is mindful that the issue here is not whether the plaintiff will prevail at trial, but rather whether he is entitled to proceed with his claims.  In re Digi Intern., Inc. Sec. Litig., 6 F. Supp. 2d 1089, 1095 (D. Minn. 1998).

Defendants argue that Smith's allegations of Questar's omissions or misrepresentations do not meet the heightened pleading standard of Rule 9(b).  (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Class Action Compl. at 10-12 [Doc. No. 18].)  These alleged omissions or misrepresentations can be categorized as: (1) Questar's alleged failure to heed due diligence advisors or adequately perform due diligence; (2) the DBSI PPM and other offering, sales, and marketing or advertising materials; and (3) assurances that DBSI securities were sound investments.  (Id. at 10.)

Smith responds that his allegations overcome Rule 9(b) because they detail:

| | |
|---|---|
| Who: | Questar, controlled by Allianz and Yorktown |
| What: | sold about $20 million in DBSI securities that were part of DBSI's Ponzi scheme to Smith and other investors; |
| Where: | Minnesota |
| When: | Between October 16, 2006 and October 16, 2012 for the putative class; February 21, 2008 for Smith, and 2008 Notes generally, February 6, 2008—the 2008 Notes PPM's date; and |
| How: | via PPM[sic]s rife with material omissions and misrepresentations, and via Questar's due diligence failures. |

8

(Pl.'s Opp'n to Defs.' Mot. to Dismiss at 33-34 [Doc. No. 29].)  In addition, Smith cites

repeatedly to paragraphs 23 and 25 of the Complaint, in support of his position that the

Complaint does specify Questar's "misrepresentations, omissions, and due diligence

failures."  (Id. at 31-32.)

The Court finds that the Complaint pleads with considerable specificity the

circumstances of DBSI's fraud, but not that of Questar.  Paragraphs 23 and 25 of the

Complaint, for example, thoroughly describe the conclusions of the Bankruptcy Examiner's

Interim Report about the PPM misstatements and DBSI's fraudulent activities.  (Compl. ¶¶

23, 25.)  Smith, however, does not bring this action against DBSI.  Where he has sued the

instant Defendants, Smith must provide detailed allegations of their fraudulent activities.

Smith has not done so here.  First, regarding Questar's alleged failure to heed due diligence

advisors or adequately perform due diligence, Smith does not specify the contents of any

due diligence reports, or when and where they were compiled.[1]  At most, Smith alleges that

---

[1] For example, Smith alleges, "[u]pon information and belief, Questar's due diligence
advisors raised questions about the accuracy of DBSI's offering materials and financial
statements.  Alternatively, upon information and belief, Questar's due diligence advisors'
reports raised certain red flags that should have (but did not) prompt Questar to undertake
its own independent due diligence." (Compl. ¶ 26.)  Allegations pleaded on information
and belief usually do not meet Rule 9(b)'s particularity requirement.  See generally 5A
CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE
§ 1298 (3d ed. 2004); 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE
§ 9.03[1][g] (3d ed. 1997).

The Court considers Smith's argument that he cannot plead the contents of due diligence
reports that only Questar likely possesses.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 34
[Doc. No. 29].)  Although allegations may be pleaded on information and belief when the
facts constituting the fraud are "peculiarly within the opposing party's knowledge," Fla.
State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 668 (8th Cir. 2001), Rule

Mick & Associates, P.C. and Buttonwood Investment Services, LLC, "among others," prepared these reports.  (Id. ¶ 37.)  Smith does not sufficiently allege that these reports contained red flags of a Ponzi scheme, or that Questar ignored any such indications. Second, with respect to Questar allegedly distributing, offering, and selling DBSI-issued securities through materially misleading PPMs and marketing materials, Smith does not allege when, where, or by whom the PPM and other materials were transmitted to Smith or putative class members.  (E.g., id. ¶¶ 38, 42, 61.)  Third, with respect to Questar's alleged assurances to Smith and the putative class members about the soundness of DBSI securities, Smith's general allegations do not identify the time, place, or contents of the assurances, or by whom they were made.  (Id. ¶¶ 50, 83.)  For these reasons, Smith's allegations are inadequate to state a claim that Questar is directly liable for fraud.

Accordingly, the Court grants Defendants' motion to dismiss Counts 1, 2, 3, 5, 6, and 7 because they do not meet the heightened pleading standard of Rule 9(b).  The Court grants Defendants' motion to dismiss Count 4 for the reasons set forth in Part III(E)(3), as a common law negligence claim is not subject to the heightened pleading standard.  Within thirty days of this Order's date, Smith may file an amended complaint that complies with the requirements of Rule 9(b) as set forth above to be viable.

---

9(b) may be satisfied "if the pleader identifies the available information on which the allegation of fraud is founded, as well as the efforts made to obtain additional information."  MOORE'S FEDERAL PRACTICE § 9.03[1][g].  Smith has not identified such information or efforts made to obtain additional information in the Complaint.  Thus, pleading "on information and belief" is insufficient here.

### D.  Minnesota Securities Act

#### 1.  Applicability of the Minnesota Securities Act

Defendants argue that Counts 1, 2, 3, 6, and 7 of the Complaint, which assert claims under the Minnesota Securities Act, should be dismissed for failure to state a claim because the Minnesota Securities Act[2] does not apply.  Defendants submit that the allegations do not establish that the offer to sell the Smith Note or the actual sale thereof was made in Minnesota—nor do the allegations establish that the offer to purchase or the actual purchase of the Smith Note was made and accepted in Minnesota.  (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Class Action Compl. at 12 [Doc. No. 18].)  Defendants contend that to the contrary, the Subscription Agreement between Smith and DBSI 2008 Notes Corporation shows that all of the relevant conduct occurred outside Minnesota.  (Id. at 13.)

Smith responds that Questar, a Minnesota corporation, principally operates out of Minnesota, and upon information and belief, Questar's culpable acts all occurred in Minnesota.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 12 [Doc. No. 29].)  In addition, Smith argues that the Subscription Agreement establishes the applicability of Minnesota law, because a Minnesota phone number was listed for the Questar official who approved the offer to Smith, and a Questar employee—then working at the headquarters in Minnesota— authorized the Subscription Agreement and thus extended Smith's offer.  (Id. at 12-13.)

The Court has reviewed the Subscription Agreement.  This document lists a mailing address and telephone number for Smith in Miami, Florida.  (Ex. C to Aff. of Anthony N.

---

[2] The Minnesota Securities Act applies to the offer to sell or the sale of a security only if "the offer to sell or the sale is made in this state [Minnesota] or the offer to purchase or the purchase is made and accepted in this state [Minnesota]." MINN. STAT. § 80A.87(a).

Cicchetti at 1 [Doc. No. 19-3].)  In addition, the document lists Questar as the

"broker/dealer" with a Minnesota telephone number and the authorizing signature of an "R.

Bourell."  (Id. at 2.)  Further, the Subscription Agreement lists a registered representative at

an address in Glenville, North Carolina and an office telephone number in Florida.  (Id.)

From these facts alone, the Court cannot discern where the offer to sell or the sale itself was

made, or where the offer to purchase or the purchase itself was made.  Discovery is

necessary to develop a fair record on whether the Minnesota Securities Act applies, after

which Defendants may renew their argument by way of summary judgment, if appropriate.

Accordingly, the Court denies Defendants' motion to dismiss Counts 1, 2, 3, 6, and 7 for

failure to state a claim under the Minnesota Securities Act.

### 2.   Private Cause of Action under Minn. Stat. § 80A.68

Defendants argue that Counts 1, 2, and 6 of the Complaint, which state causes of

action under Minn. Stat. § 80A.68(1), (2), and (3) respectively, should be dismissed under

Federal Rule of Civil Procedure 12(b)(6) because private causes of action are unavailable

under Minn. Stat. § 80A.68.  (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the

Class Action Compl. at 14-15 [Doc. No. 18].)

The Court disagrees.  Private causes of action are available under Minn. Stat.

§ 80A.68, which is the general fraud provision under the Minnesota Securities Act.  See

Merry v. Prestige Capital Mkts., Ltd., No. 12-cv-1608, 2013 WL 1900628, at *4-*6 (D.

Minn. May 7, 2013) (permitting investor plaintiff to amend complaint stating cause of

action under § 80A.68, and noting that § 80A.68 is the state analogue to federal Rule 10b-

5).  Thus, the Court denies Defendants' motion to dismiss Counts 1, 2, and 6 on the asserted

ground that private causes of action are unavailable under Minn. Stat. § 80A.68.

### 3. Secondary Liability Claims

#### a. Aiding and Abetting under Minn. Stat. § 80A.76(g)(3)

Count 3 of the Complaint asserts a claim against Questar under Minn. Stat.

§ 80A.76(g)(3) for materially aiding "DBSI's offer and sale of interests in a Ponzi scheme,

including, but not limited to, the DBSI 2008 Notes Corporation offering." (Compl. ¶ 92.)

Defendants argue that Smith fails to state a claim under Federal Rule of Civil Procedure

12(b)(6) because the Complaint does not name DBSI as a defendant or establish DBSI's

primary liability under Minn. Stat. § 80A.76 subsections (b) through (f). (Defs.' Mem. of

Law in Supp. of Their Mot. to Dismiss the Class Action Compl. at 16 [Doc. No. 18].)

Defendants also contend that Smith cannot establish liability under § 80A.76(g)(3) because

Questar is a legal entity—not an "individual," as specified under subsection (g)(3). (Id.)

Smith responds that the Complaint and the Bankruptcy Examiner's Reports provide

thorough detail about DBSI's fraud, which would render DBSI liable under the Minnesota

Securities Act. (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 27 [Doc. No. 29].) Smith also

rejects the proposition that he must name DBSI as a party defendant in order to sue Questar

for aiding and abetting. (Id.) Finally, Smith notes the scrivener's error in citing

§ 80A.76(g)(3) and requests leave to amend the Complaint to assert the proper subsection.

(Id. at 27-28.)

In order to allege a claim against Questar for secondary liability, Smith must first

establish primary liability on the part of DBSI. See Foley v. Allard, 427 N.W.2d 647, 650

(Minn. 1988) (applying the federal three-part test for aiding and abetting claim under

13

Minnesota Securities Act, which requires the "existence of a securities law violation by the primary party, as opposed to the aiding and abetting party"). Although Smith has not pled DBSI's primary liability explicitly, the Complaint extensively describes DBSI's fraudulent activity, as concluded by the Bankruptcy Examiner's Interim and Final Reports. (E.g., Compl. ¶¶ 23, 25.) These allegations, if true, convey DBSI's primary liability on which any secondary liability depends.

Next, the Court rejects Defendants' proposition that Smith must name DBSI as a defendant in order to sue Questar for aiding and abetting DBSI. See Sheftelman v. N.L. Indus., Inc., No. 84-3199, 1985 WL 29951, at *5 (D.N.J. Feb. 1, 1985) (identifying the "need to prove a securities *violation* but in no way indicates that the primary *violator* need be named as a defendant") (emphasis in original). The fact that Smith does not identify DBSI as a defendant does not prevent him from asserting an aiding and abetting claim against Questar.

Finally, the Court agrees that Smith cannot allege Questar's secondary liability under § 80A.76(g)(3) because Questar is not an "individual" as required under this subsection. MINN. STAT. § 80A.76(g)(3). Given what appears to be a scrivener's error, however, the Court grants leave for Smith to amend the Complaint to assert the proper subsection, § 80A.76(g)(4), instead.

Thus, the Court grants Defendants' motion to dismiss Count 3. Within thirty days of the date of this Order, Smith may file an amended complaint that correctly asserts Questar's secondary liability under Minn. Stat. § 80A.76(g)(4).

### b.  Control Person Liability under Minn. Stat. § 80A.76(g)(1)

Count 7 of the Complaint asserts a claim against Yorktown and Allianz under Minn. Stat. § 80A.76(g)(1) for control person liability.  (Compl. ¶¶ 154-57.)  Defendants argue that Smith fails to state a claim because Smith has not established Questar's primary liability, which is necessary to establish Yorktown and Allianz's secondary liability.  (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Class Action Compl. at 17 [Doc. No. 18].)  Defendants also argue that merely alleging Yorktown and Allianz's control over Questar's management and policies is insufficient pleading.  (Id.)

Smith responds that he adequately alleges Questar's primary liability under the Minnesota Securities Act.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 24-25 [Doc. No. 29].)  Smith also contends that identifying Questar's regulatory admissions that Yorktown and Allianz "directly or indirectly control Questar" and "direct Questar's management and policies" sufficiently puts Defendants on notice at the pleading stage.  (Id. at 25.)

In order to allege a claim against Yorktown and Allianz for secondary liability, Smith must first establish Questar's primary liability.  See Foley, 427 N.W.2d at 650.  The Court finds that Smith has not pled Questar's primary liability sufficiently.  Smith cites to paragraphs 23, 25, 46, 47, 51, 80, 81, and 88 of the Complaint in support of purportedly detailed allegations against Questar.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 24-25 [Doc. No. 29].)  But paragraphs 23, 25, 46, and 51 describe DBSI's fraudulent activities, not those of Questar.  Questar's alleged liability is pled only generally in the Complaint.  To illustrate:

- Questar failed to detect and disclose [DBSI's accounting hijinx] because Questar ignored its obligations under FINRA Notices . . . .  (Compl. ¶ 46.)

- Questar circulated DBSI PPMs and marketing materials to Smith and to members of the putative class.  Those documents omitted disclosure of the facts and risks identified . . . and were therefore materially false and misleading.  (Id. ¶ 47.)

- Questar publicly distributed, offered, and sold promissory securities issued by DBSI via materially misleading PPMs and marketing materials.  Questar publicly distributed, offered, and sold securities issued by DBSI via misleading omissions contained in the PPMs and marketing materials that Questar disseminated to its brokers and investors.  (Id. ¶ 80.)

- The omissions were all substantially similar in DBSI PPMs, and are identified herein.  (Id. ¶ 81.)

- Questar violated the Minnesota Securities Act when Questar circulated to its brokers DBSI promotional materials and PPMs, all the while withholding material risks repeatedly highlighted by due diligence advisors and red flags that should have been apparent to Questar, knowing that its brokers would disseminate these materials to investors.  (Id. ¶ 88.)

As discussed earlier, Smith's fraud allegations against Questar are subject to the heightened pleading standard.  See supra Part III(C).  These paragraphs do not describe with sufficient particularity Questar's failure to detect and disclose DBSI's fraudulent activities.  Nor do they allege when, where, or by whom the PPM and other materials were transmitted to Smith or putative class members.  Because Smith has not pled Questar's primary liability sufficiently, his claims against Yorktown and Allianz for secondary liability cannot stand.

The Court notes, however, that had Smith pled Questar's primary liability adequately, his control person liability allegations against Yorktown and Allianz would suffice.  See Antinore v. Alexander & Alexander Servs., Inc., 597 F. Supp. 1353, 1359-60 (D. Minn. 1984).  In Antinore, the court noted that plaintiffs "need not plead specific affirmative acts showing actual control of a particular defendant over an alleged principal violator," but it was "necessary that, at the least, defendants be informed whether they are

16

alleged to be primary or secondary violators, as to which primary violator they are allegedly controlling persons and whether they are controlling persons as a result of status or affirmative acts." (Id.)  The court in Antinore held that the plaintiffs' complaint against defendant A&A met these requirements, because it named A&A as a secondary violator, identified the primary violator it allegedly controlled, and identified the relationship upon which control liability was based.  (Id. at 1960.)  Similarly, here, Smith's Complaint names Yorktown and Allianz as a secondary violator (". . . Yorktown and Allianz as control persons"); identifies the primary violator it allegedly controlled ("Defendants Yorktown Financial Companies and Allianz Life Insurance Companies of North America directly or indirectly control Questar"); and identifies the relationship upon which control liability was based ("Yorktown and Allianz direct Questar's management and polices").  (Compl. ¶¶ 157, 155, 156.)  Thus, were Questar's primary liability pled sufficiently, Smith's allegations against Yorktown and Allianz would stand.

For these reasons, the Court grants Defendants' motion to dismiss Count 7 of the Complaint.  Within thirty days of this Order's date, Smith may file an amended complaint that sufficiently pleads Questar's primary liability.

### 4.  Availability of Relief

Defendants argue that Smith is not entitled to relief under the Minnesota Securities Act because he has not alleged that he sold the Smith Note.  (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Class Action Compl. at 18-19 [Doc. No. 18].)  Plaintiff responds that he is not required to sell the Smith Note before suing, and that he is entitled to actual damages if he "disposes" of the 2008 Note any time before judgment.  (Pl.'s Opp'n to

Defs.' Mot. to Dismiss at 28-29 [Doc. No. 29].)

The Court agrees with Plaintiff.  The Minnesota Securities Act does not require Plaintiff to sell the Smith Note before suing.  Indeed, the statute is altogether silent on when a plaintiff must dispose of the security.  MINN. STAT. § 80A.76(b)(3) ("Actual damages in an action arising under this subsection are the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and interest from the date of the purchase, costs, and reasonable attorneys' fees determined by the court." ).  To require sale before suit, particularly where no market would exist for an allegedly worthless security, would leave purchasers of securities that cannot be legally sold without a remedy. As long as Plaintiff disposes of the Smith Note before judgment,[3] which he may do by tendering it to Questar, Plaintiff may recover actual damages.

Thus, the Court denies Defendants' motion to dismiss Plaintiff's claims under the Minnesota Securities Act on the asserted ground that Plaintiff has not alleged selling the Smith Note before litigation.

### 5.  Statute of Limitations

Defendants argue that Plaintiff's claims under the Minnesota Securities Act— brought in October 2012—are barred by the two-year statute of limitations.  (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Class Action Compl. at 19 [Doc. No. 18].) Defendants contend that the statute of limitations began to run upon Plaintiff's receipt of

---

[3] The Court notes that under the Uniform Securities Act, a plaintiff's remedy is limited to either rescission or actual damages, and a plaintiff "is not given the right under this type of statutory formula to retain stock and also seek damages."  Uniform Securities Act § 509 (2002), Official Comments 1, 5.

18

DBSI's PPM in February 2008, and that public documents alleging DBSI's impropriety put Plaintiff on inquiry notice as early as October 2008.  (Id. at 20-22.)

Smith responds that his claims under the Minnesota Securities Act are not time-barred, because the documents cited by Defendants in support of their statute of limitations argument do not indicate wrongdoing by Questar.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 9 [Doc. No. 29].)  Smith submits that the first public documents accusing Questar of wrongdoing were filed less than two years before he began this litigation.  (Id. at 10.)  Smith further contends that whether the two-year statute of limitations has run is a fact issue for the jury, and not for resolution on a motion to dismiss.  (Id.)

In Minnesota, an action for securities fraud must be brought either two years after discovery of the facts constituting the violation or five years after the violation, whichever is earlier.  MINN. STAT. § 80A.76(j)(2).  The Court agrees with Smith that the statute of limitations runs from the time that he reasonably should have understood that he had a claim against Questar, because this case names Questar and not DBSI as a defendant.  Thus, Smith's receipt of DBSI's PPM and the public documents alleging DBSI's impropriety in 2008 does not time-bar his claims under the Minnesota Securities Act.

The Court also agrees with Smith that the question of whether the two-year statute of limitations has run is not for resolution on Defendants' Motion to Dismiss.  See Joyce v. Teasdale, 635 F.3d 364, 367 (8th Cir. 2011).  As a general rule, "the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense."  Id.  (citing Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008)).  Here, the Complaint does not establish this defense, because Smith

does not allege facts suggesting he understood that he had a claim against Questar beyond the two-year statute of limitations period.  Thus, the Court does not resolve the statute of limitations issue for the Minnesota Securities Act claims at this time.

For these reasons, the Court denies Defendants' Motion to Dismiss Plaintiff's claims under the Minnesota Securities Act on the asserted ground that they are barred by Minnesota's two-year statute of limitations.

### E.  Negligence and Negligent Misrepresentation Claims

#### 1.  Choice of Law and Statute of Limitations

Defendants argue that under a choice-of-law analysis, Florida law applies to Plaintiff's negligence and negligent misrepresentation claims.  (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Class Action Compl. at 23-27 [Doc. No. 18].) Defendants contend that under Florida law, these claims are time-barred by Florida's four-year statute of limitations.  (Id. at 27-28.)

Plaintiff responds that Minnesota law, not Florida law, applies to his tort claims. Accordingly, he argues that Minnesota's six-year statute of limitations applies and does not bar his claims.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 11 [Doc. No. 29].)  Plaintiff also contends that even if Florida law were to apply, Florida's four-year statute of limitations does not bar his negligence and negligent misrepresentation claims because he did not suffer actual damages from Questar's wrongdoing until the DBSI securities became worthless in November 2008.  (Id.)

The Court declines to analyze choice of law at this time.  Plaintiff alleges that the "violations of Minnesota law that give rise to this putative class action occurred in this

District." (Compl. ¶ 16.)  Meanwhile, Defendants allege that Plaintiff, a Florida resident, received and relied on any alleged misrepresentations or omissions in Florida; executed his Subscription Agreement and purchased the Smith Note in Florida; and sustained any injury in Florida. (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Class Action Compl. at 23 [Doc. No. 18].)  Without discovery and a full record, it is not possible to evaluate which state law should apply to Plaintiff's claims.  For example, the Subscription Agreement raises questions about where the offer to sell the Smith Note or the sale itself was made, or where the offer to purchase or the purchase itself was made.  Supra Part III(D)(1).  The Court cannot conduct this fact-intensive inquiry on the motion-to-dismiss record.  See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig., 484 F. Supp. 2d 973, 985 n.7 (D. Minn. 2007) (evaluating the sufficiency of Plaintiff's subrogation claim on a motion to dismiss and stating that there is "no need to perform a choice of law analysis at this stage of the proceedings").  Because the Court does not determine whether Minnesota or Florida law applies at this time, it also reserves ruling on the statute of limitations issue with respect to the negligence and negligent misrepresentation claims.

### 2.  Economic Loss Doctrine

Defendants argue that the economic loss doctrine precludes Smith's negligence and negligent misrepresentation claims, because Plaintiff has not alleged separate physical injury or property damage.  (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Class Action Compl. at 29 [Doc. No. 18].)  Plaintiff responds that the economic loss doctrine does not preclude his tort claims because under Minnesota law, the doctrine only bars tort claims in the sale of defective goods, and the doctrine does not apply if the

misrepresentation was made "recklessly."  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 36

[Doc. No. 29].)  Plaintiff also argues that under Florida law, the doctrine only applies in

product liability cases and when the breached duties arise in contract, neither of which is

present here.  (Id.)

The Court need not decide which state's law to apply because the Court finds that the

economic loss doctrine would not preclude recovery here under either Florida or Minnesota

law.  See Cotton v. Commodore Express, Inc., 459 F.3d 862, 864 (8th Cir. 2006) (holding

that the court was not required to analyze choice of law because the appellees would

prevail under the laws of either state alleged to apply).  The Supreme Court of Florida

recently held that the economic loss rule applies only in the products liability context, and it

receded from prior rulings to the extent that they applied the economic loss rule to cases

other than products liability.  Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.,

110 So. 3d 399, 407 (Fla. 2013).  Because the instant litigation is not a products liability

case, the economic loss rule does not preclude recovery under Florida law.

In Minnesota, the economic loss doctrine is codified at Minn. Stat. §§ 604.10-.101

(2012).  This statute provides in relevant part: "[e]conomic loss that arises from a sale of

goods, between merchants, that is not due to damage to tangible property other than the

goods sold may not be recovered in tort."  MINN. STAT. § 604.10(b).  "Goods" are defined

as "tangible personal property."  Id. § 604.101(c).  The Court finds that because investment

securities are not tangible personal property, they are not "goods" under Minn. Stat.

§§ 604.10-.101.  Thus, Minnesota's economic loss rule does not preclude Smith's

negligence and negligent misrepresentation claims.

### 3.  Pleading Negligence

The parties contest whether Plaintiff has pled the elements of a negligence claim adequately.  Such a claim requires Plaintiff to allege: (1) that Questar owed Smith a duty of care; (2) breach of that duty; (3) that breach of the duty proximately caused Smith's injury; and (4) damages.[4]  See Minneapolis Emp. Ret. Fund v. Allison-Williams Co., 519 N.W.2d 176, 182 (Minn. 1994); Jackson Hewitt, Inc. v. Kaman, 100 So.3d 19, 27-28 (Fla. Ct. App. 2011) (citing Clay Elec. Coop., Inc. v. Johnson, 873 So.2d 1182, 1185 (Fla. 2003)).

Citing the Complaint's reference to FINRA's Regulatory Notice to Members 03-71 and 10-22, Plaintiff argues that he sufficiently alleged a duty on Questar's part to perform the due diligence that it allegedly failed to do.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 38 [Doc. No. 29]; Compl. ¶¶ 104, 107, 129-31.)  These Notices set forth due diligence practices, and they remind broker-dealers of their obligation to conduct a reasonable investigation of the issuer and the securities they recommend.  (Exs. C and D to Compl. [Doc. Nos. 1-3 and 1-4].)

Defendants argue that these Notices do not create a duty because they issued after Plaintiff purchased the Smith Note.  (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Class Action Compl. at 29 [Doc. No. 18].)  In addition, Defendants argue that Plaintiff cannot use a regulatory standard to establish a duty of care in a negligence action.  (Tr. of Hr'g on Defs.' Mot. to Dismiss at 19 [Doc. No. 39].)

---

[4] The Court need not decide whether Minnesota or Florida applies at this time because the elements for negligence in both states are similar.  See Leonards v. S. Farm Bureau Cas. Ins. Co., 279 F.3d 611, 612 (8th Cir. 2002) (finding it unnecessary to resolve a choice-of-law conflict when the relevant legal principles were the same in both states at issue).

The Court finds that Plaintiff has not identified a legal duty owed by Defendants by relying only upon FINRA's Regulatory Notice to Members 03-71 and 10-22.  First, courts have rejected efforts to derive causes of action from securities regulations based on a negligence standard.  See BNP Paribas Mortgage Corp. v. Bank of Am., N.A., 866 F. Supp. 2d 257, 266 (S.D.N.Y. 2012) (" . . . mere negligent violations of the NYSE [New York Stock Exchange] or NASD [National Association of Securities Dealers] rules are not actionable in federal court; rather, to form the basis for liability in damages, the broker's violations of the rules must be 'tantamount to fraud.'").  Second, Plaintiff argues that Questar "bore a duty to conduct adequate due diligence into DBSI's securities offerings," (Compl. ¶ 98), but fails to identify any negligence case finding that a duty of due diligence exists between a broker-dealer and a purchaser of securities.[5]  In this heavily regulated area of the law, the Court finds no basis to create a new common law duty.  Because Plaintiff's negligence claim lacks support for the existence of such a duty, it fails as a matter of law. For these reasons, the Court grants Defendants' motion to dismiss Count 4 of the Complaint.

### 4.  Pleading Negligent Misrepresentation

The parties contest whether Plaintiff states a claim for negligent misrepresentation. Defendants argue that Questar bore no duty to discover or disclose the omissions in the

---

[5] Plaintiff cites Everest Sec., Inc. v. SEC, 116 F.3d 1235, 1239 (8th Cir. 1997), SEC v. Current Fin. Serv., Inc., 100 F. Supp. 2d 1, 14-15 (D.D.C. 2000), and Hanly v. SEC, 415 F.2d 589, 595-96 (2d Cir. 1969) for the proposition that a broker-dealer "who recommends securities must conduct a reasonable investigation regarding that offering and the issuer's representations about it."  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 40 [Doc. No. 29].)  These cases, however, do not involve negligence claims.

2008 Note PPM; Smith inadequately pled reliance; reasonable reliance was impossible; and DBSI's conduct is an intervening cause that precludes proximate cause.  (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Class Action Compl. at 31-33 [Doc. No. 18].)

Plaintiff responds that he has sufficiently pled Questar's duty to prospective investors and Plaintiff's reliance on Questar's misrepresentation.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 43-44 [Doc. No. 29].)  Plaintiff also contends that reasonable reliance was not impossible because Questar did not disclose all material risks adequately, and DBSI's negligence was not an intervening cause that relieved Questar of liability.  (Id. at 44.)

To state a claim for negligent misrepresentation, Smith must allege: (1) a misrepresentation of material fact; (2) the defendant either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the defendant intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation.[6]  Baggett v. Elec. Local 915, 620 So.2d 784, 786 (Fla. Dist. Ct. App. 1993); see Florenzano v. Olson, 387 N.W.2d 168, 174 n.3 (Minn. 1986) (in a negligent misrepresentation claim, a plaintiff must show that the defendant "supplie[d] false information for the guidance of others in their business transactions" and in doing so, "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information").  The heightened pleading requirement under Federal Rule of Civil Procedure 9(b) applies to such a claim, whether in Minnesota or Florida.  Trooien v. Mansour, 608

---

[6] The Court need not decide whether Minnesota or Florida law applies because the elements for negligent misrepresentation in both states are similar.  See Leonards, 279 F.3d at 612.

F.3d 1020, 1028 (8th Cir. 2010); <u>Lamm v. State Street Bank & Trust Co.</u>, 889 F. Supp. 2d

1321, 1332 (S.D. Fla. 2012).

The Court finds that Smith's claim for negligent misrepresentation does not meet the

heightened pleading standards of Rule 9(b).  Like Smith's claims under the Minnesota

Securities Act, the negligent misrepresentation claim relies on but does not sufficiently

describe (1) Questar's alleged failure to heed due diligence advisors or adequately perform

due diligence; (2) the DBSI PPM and other offerings, sales, and marketing or advertising

materials; or (3) assurances to investors that DBSI securities were sound investments.  <u>See</u>

<u>supra</u> Part III(C).  Rather, Plaintiff premises the negligent misrepresentation claim on

largely conclusory allegations, such as:

- Questar negligently omitted to disclose to Plaintiff and all members of the putative class that Questar had not conducted adequate due diligence and that Questar's due diligence had learned of red flags.  Questar failed to disclose the problems, their risks or implications to the Plaintiff or to any member of the putative class.  (Compl. ¶ 144.)

- Questar negligently omitted to disclose to Plaintiff and all members of the putative class that DBSI was nothing more than just another Ponzi scheme.  (<u>Id.</u> ¶ 146.)

- Questar's negligent omissions were substantially the same to Plaintiff and all putative class members.  (<u>Id.</u> ¶ 147.)

- These negligent misrepresentations were made regarding the profitability and promise of investing in DBSI notes via the misleading omissions in DBSI PPMs that Questar circulated to Plaintiff and members of the putative class.  (<u>Id.</u> ¶ 148.)

Such allegations do not satisfy the particularity requirements of Rule 9(b).  <u>See</u> <u>Parnes</u>, 122

F.3d at 550.  Therefore, the Court grants Defendants' motion to dismiss Count 5.  Within

thirty days of the date of this Order, Smith may file an amended complaint that complies

with the requirements of Rule 9(b) as set forth above.

### F.  Class Allegations

Finally, Defendants argue that all claims relating to the offer and sale of DBSI securities other than the Smith Note must be dismissed because Plaintiff invested only in his note.  (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Class Action Compl. at 33 [Doc. No. 18].)  Plaintiff responds that he is not required to invest in all class securities to be a class representative.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 21 [Doc. No. 29].)

The Court agrees with Plaintiff.  A class representative "need not have invested in each security so long as the plaintiffs have alleged a single course of wrongful conduct with regard to each security."  In re Dreyfus Aggressive Growth Mut. Fund Litig., No. 98-cv-4318, 2000 WL 1357509, at *3 (S.D.N.Y. Sept. 20, 2000).  Here, Plaintiff has alleged a single course of wrongful conduct with regard to each security.  That is, from approximately October 16, 2006 to October 16, 2012, Smith and the putative class members "purchased or acquired securities issued by DBSI . . . that, upon information and belief, were offered and sold through promotions, solicitations, or offers made by Defendant Questar."  (Compl. ¶ 10.)  Questar's alleged ignorance of due diligence warnings or its failure to conduct due diligence pertained to all of these securities at issue.  (Id. ¶ 50.)

The Court notes, however, that to the extent Plaintiff's claims as an individual lack particularity under Rule 9(b), his claims for the putative class do as well.  Thus, the Court grants Defendants' motion to dismiss Smith's claims regarding the putative class—not because Plaintiff did not invest each security, but rather, because the fraud allegations of the putative class do not meet the heightened pleading standard.  Within thirty days of the date

of this Order, Smith may file an amended complaint that complies with the requirements of

Rule 9(b) as set forth above.

## IV.    ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED THAT** Defendants' Motion to Dismiss Plaintiff's Class Action

Complaint [Doc. No. 16] is **GRANTED IN PART** and **DENIED IN PART** consistent

with this Order:

1.   Defendants' Motion to Dismiss Counts 1, 2, 3, 6, and 7 of the Class Action Complaint alleging violations of the Minnesota Securities Act is **GRANTED WITHOUT PREJUDICE**.

2.   Defendants' Motion to Dismiss Count 4 of the Class Action Complaint alleging common law negligence is **GRANTED WITH PREJUDICE**.

3.   Defendants' Motion to Dismiss Count 5 of the Class Action Complaint alleging common law negligent misrepresentation is **GRANTED WITHOUT PREJUDICE**.

**IT IS FURTHER HERBY ORDERED** that Plaintiff shall have thirty days from the date

of this Order to file an amended complaint.

Dated: August 2, 2013                              s/ Susan Richard Nelson
                                                   SUSAN RICHARD NELSON
                                                   United States District Court Judge